Steven L. Weinberg, Esq. (SBN 159027)
Wein Law Group
1875 Century Park East, Suite 1750
Los Angeles, CA 90067
(310) 598-7005
Steven@WeinLawGroup.com

Attorneys for Plaintiff, Cary Jones

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA –WESTERN DIVISION

CARY JONES, an individual,

Plaintiff,

vs.

Netflix, Inc., a Delaware Corporation, Getty Images (US), Inc., a New York Corporation, BBH Entertainment, a division of Bartle Bogle Hegarty, LLC, a Delaware Limited Liability Company, Raw TV Ltd., a foreign corporation, and DOES 1-20 inclusive,

Defendants.

**CASE NO.:** 2:25-cv-9259

COMPLAINT FOR DAMAGES:

1. Defamation
2. False Light Invasion of Privacy
3. Negligence
4. Misappropriation of Likeness

DEMAND FOR JURY TRIAL

## INTRODUCTION

1. This is a case about gross misidentification, reckless publication, and reputational harm inflicted upon a private citizen who was wrongly inserted—by name and image—into a scandal-laden documentary distributed to millions of viewers around the world.

2. Plaintiff Carey Jones, a completely unaffiliated and private individual, was falsely identified as "Allan Mayer," a former board member of American Apparel, in Trainwreck: The Cult of American Apparel, a sensational Netflix-distributed documentary about the company's collapse amid sexual misconduct, financial impropriety, and toxic corporate culture.

3. In a segment purporting to show American Apparel's leadership team, the documentary displayed a clear, close-up photograph of Mr. Jones—wrongly labeled as Mayer—implying he held a leadership role in the company's most controversial and disgraceful era. Mr. Jones had no connection whatsoever to Mayer, to American Apparel, or to any of the individuals or events depicted in the film.

4. This was not a fleeting background appearance or a harmless editorial oversight. It was a false statement of fact, presented with journalistic authority and broadcast by one of the largest media companies in the world. The result: Mr. Jones, an innocent third party, was falsely and irrevocably linked to a narrative of sexual exploitation and boardroom complicity.

5. The photograph was obtained through Getty Images and used by the producers—Raw TV Ltd., a UK-based production company, and BBH Entertainment, a U.S. media studio—without verifying the identity of the individual depicted. Netflix, which distributed the documentary to a global audience, failed to ensure basic factual accuracy before publishing the defamatory material on its platform.

6.      Defendants had both the resources and legal obligation to verify the identities of individuals depicted in their content.  Getty, as a sophisticated licensor of editorial and commercial imagery, either misrepresented or failed to vet the photograph's identifying metadata.  Netflix, as one of the largest content distributors in the world, failed to exercise even the most basic due diligence before prominently featuring that image in a documentary watched by millions.

7.      Following the documentary's release, Mr. Jones was immediately contacted by family, friends, and colleagues, confused and disturbed by what appeared to be his participation in a corporate scandal.  Mr. Jones, shocked and humiliated, made multiple written demands for removal and correction to both Netflix and Getty.  While Getty furtively removed Mr. Jones's picture from its licensing platform (albeit after the damage was done), both have refused to take any other action.

8.      Plaintiff has suffered real and lasting harm.  As a result of Defendants' conduct, his name and image are now falsely tied to one of the most notorious corporate scandals in recent memory.  He has experienced reputational damage, personal embarrassment, emotional distress, and a profound disruption to his personal and professional life.

9.      Moreover, the documentary remains publicly available, and Plaintiff's image—misidentified, unauthorized, and damaging—continues to circulate with each new viewer.  The injury is ongoing, the reputational stain is permanent, and the Defendants' indifference is inexcusable.

10.     This lawsuit seeks to hold accountable those who profited from Mr. Jones's identity without permission, published defamatory content without verification, refused to act even after the truth was made clear, and to ensure that no other individual is subjected to the same treatment.

/ / /

## SUBJECT-MATTER JURISDICTION

11. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and the parties are all citizens of different states and foreign entities. Plaintiff is a citizen of the State of California, Netflix, Inc. ("Netflix") is a Delaware corporation, Getty Images (US), Inc. ("Getty") is a New York corporation, BBH Entertainment ("BBH) is a Delaware corporation and Raw TV Ltd. is a United Kingdom business entity. Accordingly, complete diversity of citizenship exists.

## PERSONAL JURISDICTION

12. This Court has personal jurisdiction over Defendants Netflix and Getty because each Defendant has purposefully availed itself of the privileges and benefits of conducting business within the State of California and within this judicial district.

13. Netflix maintains offices and conducts substantial, continuous, and systematic business operations in Los Angeles County, including through its office located at 5808 Sunset Boulevard, Los Angeles, California 90028, where production, distribution, and licensing decisions concerning its audiovisual programming are made.

14. Getty likewise conducts substantial and ongoing business activities in Los Angeles County, including through its office located at 6300 Wilshire Boulevard, Suite 1700, Los Angeles, California 90048, where it licenses and markets photographic images, including the image at issue in this case.

15. BBH Entertainment, through its parent company Bartle Bogle Hegarty LLC, conducts business operations in the United States and California, including entertainment development and media production activities.

16. Raw TV Ltd., although a United Kingdom entity, purposefully directed its conduct at the United States market. Raw TV entered into production and licensing agreements anticipating global distribution of the documentary, including in California. The reputational harm suffered by Plaintiff in this District was a foreseeable consequence of that distribution.

17. The wrongful acts and omissions alleged herein were expressly aimed at this District and caused injury to Plaintiff in this District. Likewise, all Defendants purposefully availed themselves of the privileges of conducting activities within this forum and could reasonably anticipate being haled into court here.

18. Accordingly, the exercise of personal jurisdiction over Defendants comports with due process and is proper under California's long-arm statute, Cal. Code Civ. Proc. § 410.10.

## VENUE

19. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because Defendants are subject to personal jurisdiction in this District and regularly transact business here.

20. Venue is further proper under § 1391(b)(3) with respect to any foreign defendant, including Raw TV Ltd., because that entity is not a resident of the United States and may be sued in any judicial district under § 1391(c)(3).

21. Netflix maintains offices and conducts extensive business operations in this District, including at its offices located at 5808 Sunset Boulevard, Los Angeles, California 90028, where production, distribution, and licensing decisions concerning its audiovisual programming are made and executed.

22. Getty likewise conducts substantial and continuous business in this District, including through its office located at 6300 Wilshire Boulevard, Suite 1700, Los Angeles, California 90048, where it licenses, markets, and distributes photographic images, including the photograph at issue in this case.

23. Accordingly, venue is proper in the United States District Court for the Central District of California, Western Division (Los Angeles).

**THE PARTIES**

24. Plaintiff Cary Jones is, and at all relevant times was, a citizen of the State of California, residing in Santa Barbara County, California.

25. Defendant Netflix, Inc. ("Netflix") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Los Gatos, California.

26. Defendant Getty Images (US), Inc. ("Getty") is a corporation organized and existing under the laws of the State of New York, with its principal place of business in Seattle, Washington.

27. Plaintiff is informed and believes and thereon alleges that BBH Entertainment is a division of Bartle Bogle Hegarty, LLC ("BBH") which is a limited liability company organized and existing under the laws of the State of Delaware with its principle place of business in New York, New York.

28. Plaintiff is informed and believes and based thereon alleges that Defendant Raw TV Ltd. ("Raw") is a foreign business entity organized under the laws of the United Kingdom with its principal place of business in London, England.

29. Plaintiff is informed and believes, and thereon alleges, that each of the named defendants is in some manner legally responsible for, participated in, directed, controlled, ratified, authorized, and/or aided and

abetted the acts, omissions, or conduct of the other defendants alleged herein.

30.    Plaintiff is ignorant of the true names and capacities of Does 1–20 and therefore sues them fictitiously.  Plaintiff does not know the true names of Defendants 1 through 20 and therefore sue them by those fictitious names. Plaintiff will seek leave of the Court to insert their true names and capacities when ascertained.  Plaintiff is informed and believes that each of the fictitiously designated defendants is responsible to it in the same fashion as the identified defendants.

31.    Plaintiff is informed and believes, and based upon such information and belief alleges, that each of the fictitiously named DOE Defendants is responsible in some manner, way, or form, and to some extent for acts, events, breaches and occurrences hereinafter alleged, and that Plaintiff's damages as hereinafter alleged were proximately caused by their conduct.  Wherever appearing in this complaint, each and every reference to "Defendant" and/or "Defendants" is intended and shall be a reference to all Defendants in this action, and each of them, including all fictitiously named DOE Defendants.

32.    Plaintiff is informed and believes, and based upon such information and belief alleges, that at all times relevant to this action, each of the Defendants named herein were the agent, principal, representative, joint-venturer, alter ego, and/or partner (of any kind) of each and every other Defendant and, in doing the things hereinafter alleged, was acting within the course and/or scope of such authority as the agent, principal, representative, joint-venturer, and/or partner (of any kind) with the permission and consent of the remaining Defendants.

/ / /

/ / /

## GENERAL ALLEGATIONS

33. Plaintiff Cary Jones is a private citizen residing in California. He is not a public figure and has no affiliation—professional or otherwise—with American Apparel, Dov Charney or Allan Mayer.

34. In or about 2025, the documentary “Trainwreck: The Cult of American Apparel” was released and made available globally through the Netflix streaming platform (“Trainwreck”). The film purports to explore the rise and fall of the clothing company American Apparel and its controversial founder, Dov Charney.

35. Getty is a global content licensing company that operates a stock image platform used by media outlets, production companies, and commercial publishers. Getty offers images for license by third parties and, in doing so, is responsible for curating, tagging, categorizing, and distributing images based on identifying metadata and editorial descriptions.

36. At some point before 2025, Getty accepted and published a photograph of Plaintiff in its image library. Upon information and belief, Getty either (a) affirmatively misidentified the subject of the photograph as "Allan Mayer," or (b) made the image searchable or indexed in a manner that associated it with Mr. Mayer or American Apparel, despite no such connection in fact.

37. Plaintiff is informed and believes and thereon alleges that Trainwreck was produced chiefly by Raw, a UK based company known for producing documentaries for international distribution and BBH, which operates as a content studio and co-producer of entertainment projects.

38. Plaintiff is informed and believes and thereon alleges that Netflix served as the exclusive distributor of Trainwreck, streaming the documentary to a global audience, including tens of millions of subscribers within the United States and California specifically. Upon information and belief, Netflix co-

commissioned Trainwreck, retained editorial approval rights and also participated in the production and development process.

39.    At some point before or during 2025, Raw, BBH and/or Netflix together, licensed the photograph of Plaintiff referenced at Paragraph 36 hereof which previously had been erroneously identified by Getty as an image of Allan Mayer from Getty as part of developing, producing and releasing Trainwreck.

40.    In a segment of the film depicting the members of American Apparel's board of directors, Netflix used Plaintiff's photograph while identifying him (falsely) as "Allan Mayer."  (See, **Exhibit A**.)

41.    This was not a passing or harmless reference.  The documentary, which explores allegations of sexual harassment, abuse of power, and toxic workplace culture at American Apparel under Dov Charney's leadership, devotes significant attention to the composition and conduct of the company's board.  The use of Plaintiff's image in this context explicitly and falsely associates him with the scandal and, implicitly, with decisions made—or misconduct tolerated—by that board.

42.    Plaintiff had no advance notice of the documentary's release.  He first learned of his appearance from friends, colleagues and family members who recognized him Trainwreck and contacted him with concern and confusion about his apparent association with Dov Charney and his role at American Apparel.

43.    As soon as Plaintiff became aware of his appearance in Trainwreck (together with the existence of his image on the Getty's platform), he promptly contacted both Netflix and Getty in writing through counsel, requesting immediate removal of the image and a publication of a correction or retraction.  While Getty furtively removed the image from its licensing platform, both companies otherwise refused to take corrective action.

44. To date, the documentary remains available on Netflix's platform, uncorrected and unrevised, continuing to broadcast the false identification to a global audience. Getty has not issued any retraction, disavowal, or correction regarding the image's licensing history or metadata.

45. As a result, Plaintiff has suffered serious reputational harm, emotional distress, and a persistent cloud over his personal and professional identity. The misidentification has forced him to repeatedly deny involvement in one of the most controversial business scandals of the last 20 years.

46. Neither, Raw, BBH, Getty nor Netflix obtained a model release, a license from Plaintiff or his permission to use his likeness for editorial or commercial purposes. Defendants acted without consent, without due diligence, and with reckless disregard for the consequences of their actions.

## FIRST CAUSE OF ACTION

Defamation (Libel *per se*)

[Against Netflix, Raw and BBH]

47. Plaintiff incorporates all preceding paragraphs as though fully set forth herein by this reference.

48. Defendants published and distributed a false and defamatory statement of fact about Plaintiff — namely, the misidentification of Plaintiff (Cary Jones) as "Allan Mayer," a former member of the board of directors of American Apparel—through both visual and narrative elements in Trainwreck.

49. The segment in question explicitly identifies Plaintiff by image, placing his face among a visual lineup of American Apparel board members and attaching to him a role in the well-documented and deeply scandalous downfall of the company, its toxic workplace culture, and the allegations of illegal sexual and financial misconduct involving its founder, Dov Charney. (See, **Exhibit A**.)

/ / /

**A. False Statement of Fact and Defamatory Meaning**

50. The use of Plaintiff's image in this manner constitutes a false statement of fact. Plaintiff, Cary Jones is not Allan Mayer. He has never served on American Apparel's board, has no business or personal relationship with any of the individuals depicted, and has no connection to the subject matter of the documentary whatsoever.

51. By juxtaposing Plaintiff's image with on-screen text, voiceover narration and visual context that explicitly identifies him as "Allan Mayer" in a documentary discussing serious allegations of sexual coercion, corporate negligence, and institutional failure, Defendants falsely told their viewers that Plaintiff was involved in, or complicit with, the conduct described.

52. The meaning conveyed was unambiguous: that Plaintiff was a key figure in an organization widely accused of enabling predatory behavior, engaging in financial mismanagement, and fostering a culture of workplace abuse. The average viewer would not reasonably understand this portrayal as parody, opinion, or dramatization—it was a documentary presented as factual, journalistic content.

53. Such an identification—linking a real person to a scandal involving sexual harassment, abuse of power, and misconduct—is defamatory *per se*, as it tends to expose the subject to hatred, contempt, ridicule, or obloquy and to injure him in his personal and professional reputation.

**B. Fault – Negligence and Actual Malice**

54. Defendants acted at a minimum with negligence, and likely with reckless disregard for the truth, in failing to verify the identity of the person depicted in the photograph they used.

55. Upon information and belief, Raw and BBH, as the producers of the program, failed to conduct basic factual review or visual verification before incorporating the image into their editorial lineup. They obtained the

photograph from Getty Images without confirming that it depicted the individual they were attributing it to.  This failure occurred despite the documentary's professed adherence to journalistic standards and the sensitive nature of the accusations made in the film.

56.    Netflix, as the worldwide distributor and host of the documentary, had the legal and operational ability to review, approve, or modify the final content.  Netflix, as a sophisticated media company, understands the reputational risks posed by factual errors in true-crime and docu-journalistic programming.  At minimum, it acted with reckless disregard by failing to exercise basic editorial oversight or to respond when notified of the misidentification.

57.    After the documentary's release, Plaintiff—through counsel—repeatedly notified both Netflix and Getty in writing of the misidentification and requested that the image be removed or corrected. Netflix refused to remove the image or publish any correction, and instead continued to distribute the program unchanged, thereby compounding the harm.

58.    Defendants' refusal to correct or retract the defamatory identification despite clear notice of the error constitutes continuing publication with actual malice.

**C. Damages**

59.    As a direct and proximate result of Defendants' false and defamatory publication, Plaintiff has suffered—and continues to suffer—substantial reputational harm, emotional distress, humiliation, and interference with personal and professional relationships.

60.    Friends, business contacts, and acquaintances have contacted Plaintiff to ask about his connection to American Apparel and whether he was involved in the conduct described in the documentary.  Plaintiff has been forced to deny, explain, and defend himself against accusations he had no

role in, and his good name has been unfairly tainted by false association with a toxic corporate scandal.

61. Plaintiff is entitled to recover general damages for reputational injury and emotional distress, special damages for any proven economic loss, and punitive damages for Defendants' knowing, reckless, and malicious conduct.

**SECOND CAUSE OF ACTION**

False Light Invasion of Privacy

[Against Netflix, Raw and BBH]

62. Plaintiff incorporates all preceding paragraphs as though fully set forth herein by this reference.

**A. Plaintiff's Right to Privacy and Protection Against False Impressions**

63. Plaintiff Cary Jones is a private citizen with no public persona and no prior involvement in the operations, governance, or public controversies surrounding American Apparel or its former board members.

64. At all times relevant, Plaintiff had a reasonable expectation of privacy in the non-commercial use of his image and in being free from unauthorized misrepresentations about his identity, character, or professional affiliations—particularly in connection with matters involving serious accusations of sexual misconduct, financial wrongdoing, and ethical failure.

65. The documentary Trainwreck: The Cult of American Apparel, as produced by Raw and BBH and distributed worldwide by Netflix, placed Plaintiff in a false light by visually identifying him as "Allan Mayer," a former American Apparel board member, in a segment explicitly focusing on the executive leadership responsible for overseeing a company mired in abuse, scandal, and collapse. (See, **Exhibit A**.)

/ / /

**B. Highly Offensive and Misleading Portrayal**

66.    This misidentification was not incidental or background in nature. The image of Plaintiff was featured as part of a curated sequence of named board members and was used to anchor an editorial narrative that explored the enabling and oversight failures of American Apparel's leadership during its most controversial period.

67.    To any reasonable viewer, the visual and narrative context of the documentary unmistakably conveyed the message that Plaintiff:

- Was personally affiliated with American Apparel;
- Held a position of authority during a time of intense ethical breakdown; and
- May have knowingly participated in, tolerated, or failed to prevent acts of sexual exploitation, employee abuse, and corporate malfeasance.

68.    These implications—though false—placed Plaintiff in an intensely stigmatizing and humiliating light.  The suggestion that he was a board member of a notoriously scandal-ridden company, let alone one allegedly complicit in the misconduct of its founder, is deeply offensive to any reasonable person, particularly to one entirely unaffiliated with the subject matter.

69.    Mr. Jones's character, professional integrity, and personal identity were all misrepresented in a manner that would be distressing and damaging to any viewer unfamiliar with the truth. The false light created was not fleeting or harmless—it was distributed globally to millions of people on one of the most prominent media platforms in the world.

**C. Recklessness and Indifference to the Truth**

70.    Defendants acted with reckless disregard for the accuracy of the depiction.  At no time did Raw, BBH or Netflix take reasonable steps to verify

that the photograph they used was actually an image of "Allan Mayer."  The failure to verify the identity of a person being presented as a known corporate figure—especially in a documentary about corporate scandal—was grossly irresponsible.

71.    Moreover, after receiving written notice from Plaintiff's counsel, Netflix refused to remove the image Trainwreck or issue any retraction or correction while Getty simply removed the image from its sales platform (after the damage had been done).  This post-notice inaction confirms Defendants' willful indifference to the consequences of their misidentification and to the ongoing emotional and reputational harm Plaintiff experienced.

**D. Actual Harm**

72.    As a direct and proximate result of the false light portrayal, Plaintiff has experienced:

- Public confusion about his identity and involvement in the American Apparel scandal;
- Inquiries from friends, professional contacts, and family members who saw the film;
- Ongoing reputational damage in both personal and professional spheres;
- Emotional distress, anxiety, humiliation, and a sense of violation.

73.    The harm suffered by Plaintiff is ongoing.  The documentary remains publicly accessible and continues to perpetuate the false impression each time it is streamed or recommended to new audiences.

**E. Relief Requested**

74.    Plaintiff seeks all appropriate relief for the invasion of his privacy, including:

- General damages for emotional distress and loss of peace of mind;

- Special damages for reputational and professional harm;
- Injunctive relief compelling removal or correction of the false image;
- Punitive damages to deter such reckless conduct in the future.

**THIRD CAUSE OF ACTION**

Negligence

[Against All Defendants]

75.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein by this reference.

76.    At all times relevant, each Defendant owed Plaintiff a duty of reasonable care to avoid foreseeable harm that would result from the negligent or reckless use of his image and identity in a commercial, widely distributed documentary—particularly one that addressed salacious subject matter and implicated serious reputational consequences for those depicted.

77.    Getty owed a duty to Plaintiff to exercise reasonable care in the curation and labeling of images it licenses to third parties.

78.    Defendants Netflix, Raw and BBH Entertainment, as the producers of Trainwreck, owed Plaintiff a duty to exercise reasonable diligence and care in the research, vetting, and verification of the identities of individuals depicted in the documentary.  Given the nature of the content—highly publicized allegations of sexual harassment, financial impropriety, and workplace misconduct—the producers were acutely aware, or should have been aware, that improper identification of an innocent individual could result in severe reputational and emotional harm.

79.    Defendant Netflix, as the global distributor and publisher of the documentary, owed a further duty to Plaintiff to ensure that the material it released to millions of subscribers met basic editorial and factual standards,

particularly where specific individuals were identified by name and image in a context that cast them in a scandalous light.

80.    As a multinational media corporation with vast editorial influence and technical resources, Netflix is not a passive conduit of third-party content. It maintains or should maintain policies, oversight procedures, and contractual rights that allow (and obligate) it to prevent harm arising from false or misleading representations in the content it hosts and monetizes.

81.    Getty breached its duty by (a) misidentifying Plaintiff in its library, or (b) failing to implement quality controls to prevent false identification of private individuals in sensitive editorial content.

82.    Netflix, Raw and BBH breached their duties by failing to conduct even minimal due diligence before selecting, editing, and publishing an image of Plaintiff Cary Jones—misidentified as "Allan Mayer"—as a member of American Apparel's board of directors.  Upon information and belief, no internal fact-checking protocol, cross-referencing process, or subject verification step was employed before the image was integrated into a documentary segment that identified specific individuals as participants in a high-profile, misconduct-laden narrative.

83.    Despite being well aware of the potential reputational consequences to those depicted, the producers failed to verify that the image sourced from Getty Images was, in fact, a depiction of Mr. Mayer—or even to confirm that the individual had any connection to American Apparel whatsoever.

84.    Netflix further breached its independent duty of care by distributing the documentary without exercising basic editorial oversight.  Whether Netflix acted as a commissioning entity, co-producer, or merely as a licensing partner, it had the authority and resources to prevent the distribution of content that contained such a blatant and harmful misidentification.  At a

minimum, Netflix should have reviewed the documentary's factual assertions and image captions for accuracy, particularly when those images were used to visually identify named individuals as members of a disgraced corporate board.

85.    These failures are especially egregious given the notoriety of the subject matter, the documentary's extensive marketing, and the foreseeable harm that would result from associating an uninvolved third party with a corporate scandal involving allegations of sexual coercion, employee exploitation, and financial impropriety.

86.    As a direct and proximate result of the Defendants' negligent conduct, Plaintiff was falsely identified in a widely disseminated documentary, suffered reputational injury, emotional distress, and humiliation, and has had to endure the ongoing stigma of being wrongly associated with misconduct he had no part in.

87.    Plaintiff's image continues to be distributed via Netflix's platform without correction or retraction, compounding the injury and further evidencing Defendants' indifference to the consequences of their actions.

88.    Plaintiff is entitled to recover all damages proximately caused by Defendants' negligence, including but not limited to reputational harm, emotional distress, and any economic losses that may have resulted from the false identification.

## FOURTH CAUSE OF ACTION

Violation of Cal. Civ. Code § 3344

(Misappropriation of Likeness)

[Against Netflix, Raw and BBH]

89.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein by this reference.

/ / /

**A. Plaintiff's Protected Interest in His Name, Image, and Identity**

90.    Plaintiff Cary Jones is a private individual who has never consented to the commercial use of his image, likeness, or identity in connection with any entertainment production, advertising, or documentary broadcast.  At all relevant times, he maintained full rights to control the use of his name and likeness, including the right to prevent unauthorized use in any context that suggested endorsement, affiliation, or involvement with a commercial project.

91.    Plaintiff's face is distinctive and recognizable, and his image, as used in the documentary, is not incidental, blurred, or anonymized.  It appears clearly, prominently, and intentionally, in a segment identifying him by implication as "Allan Mayer," a former American Apparel board member. (See, **Exhibit A**.)

92.    The use of Plaintiff's likeness in the documentary was made without Plaintiff's knowledge or consent.  No model release or license was ever signed by Plaintiff.  No authorization was requested.  At no time did Plaintiff consent to being portrayed as someone else—particularly not in a program involving serious allegations of sexual misconduct, toxic corporate culture, and public scandal.

**B. Commercial and Promotional Use of Plaintiff's Likeness**

93.    Trainwreck is a commercial entertainment product created for profit and distributed on a global, subscription-based platform operated by Netflix.  It was developed, produced, edited, and released with the intent of monetizing viewer attention through commercial exploitation of real-life controversy.

94.    The image of Plaintiff was used as a central part of a key visual montage, introducing the members of the board of directors of American Apparel.  The montage was used to give narrative credibility to the film and to

dramatize the structure of the company at the center of the documentary's sensational storyline. The use of Plaintiff's likeness served the commercial and editorial interests of all Defendants:

- Raw and BBH Entertainment used Plaintiff's image to construct a visually engaging, seemingly accurate documentary segment to lend credibility and narrative force to their production;
- Netflix profited by distributing the film to its paid subscribers and marketing it as part of its original content library;
- All Defendants benefited from the association of real faces with real names, creating the appearance of accuracy and journalistic integrity—despite failing to ensure the identities were correct.

**C. Violation of Cal. Civ. Code § 3344 and Common Law**

95. The unauthorized use of Plaintiff's likeness in connection with the documentary constitutes a prima facie violation of California Civil Code § 3344, which prohibits the knowing use of a person's name, photograph, or likeness for purposes of advertising, selling, or soliciting without prior consent.

96. Defendants' use was knowing. Getty Images licensed the photograph for editorial use, yet Defendants used the image in a context requiring clear identity verification. The commercial nature of the use—tied to Netflix's distribution and monetization model—triggers the statutory protections of Section 3344.

97. In the alternative, even if not deemed a commercial advertisement under the statute, Defendants' actions constitute common law misappropriation of likeness, as they used Plaintiff's identity in a manner likely to cause emotional harm and reputational damage by falsely implying that he was someone else associated with a public scandal.

///

///

**D. Harm and Entitlement to Damages**

98. As a direct result of Defendants' unauthorized use of his likeness, Plaintiff has suffered:

- Emotional distress, including anxiety, embarrassment, and humiliation;
- Reputational harm, due to public confusion and wrongful association with American Apparel and its disgraced executive team;
- Loss of control over his own image and identity;
- Ongoing exposure and damage, as the documentary remains accessible on Netflix's global streaming platform.

99. As a consequence, Plaintiff is entitled to:

- Actual damages in an amount to be determined at trial;
- Statutory damages of $750 per violation under Cal. Civ. Code § 3344(a), or actual damages plus any profits attributable to the unauthorized use, whichever is greater;
- Punitive damages, for Defendants' willful and conscious disregard of Plaintiff's rights;
- Injunctive relief, including removal of the image from the documentary and digital platforms;
- Attorneys' fees and costs, as provided under Section 3344(a).

**PRAYER FOR RELIEF**

100. WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against all Defendants as follows:

- General, special, and statutory damages according to proof;
- Disgorgement of Profits;
- Injunctive relief;
- Punitive damages;

- Attorneys' fees and costs; and
- Such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury on all issues so triable.

Dated: September 28, 2025

WEIN LAW GROUP

By: ______________________________

Steven L. Weinberg, Esq. Attorneys for Plaintiff, Cary Jones

# EXHIBIT A

# EXHIBIT A

Image from Trainwreck Program

Image of Cary Jones

